## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

FRANCIS HOWLEY and     :   Civil A. No. 09-241(NLH)(JS)
CANDICE HOWLEY,       :
      Plaintiffs,   :
               :
    v.          :  **OPINION**
               :
EXPERIAN INFORMATION    :
SOLUTIONS, INC.         :
      Defendant.   :

---

**APPEARANCES:**

GREGORY JOSEPH GORSKI, ESQ.
JOHN SOUMILAS, ESQ.
FRANCIS & MAILMAN, P.C.
LAND TITLE BUILDING, 19TH FLOOR
100 SOUTH BROAD STREET
PHILADELPHIA, PA 19110
    On behalf of plaintiffs

DOROTHY A. KOWAL
PRICE, MEESE, SHULMAN & D'ARMINIO, PC
MACK-CALI CORPORATE CENTER
50 TICE BOULEVARD
WOODCLIFF LAKE, NJ 07677

    and
MICHAEL G. MORGAN, ESQ.
JONES DAY
555 SOUTH FLOWER STREET, 50TH FLOOR
LOS ANGELES, CA 90071
*Admitted pro hac vice*

    and
GEORGE E. SPENCER, ESQ.
JONES DAY
222 E 41ST STREET
NEW YORK, NY 10017
*Admitted pro hac vice*
    On behalf of defendant

**HILLMAN**, District Judge

Before the Court is defendant's motion for summary judgment on plaintiffs' consumer protection claims for alleged violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, <u>et seq</u>.  Specifically, plaintiffs have alleged violations of Sections 1681b(a), 1681e(a), 1681e(b), and 1681h(a) of the FCRA.[1] In conjunction with their motion for summary judgment, defendant has also filed a motion to exclude purported hearsay statements by Francis Firlein, and to exclude a portion of plaintiffs' expert opinion.  For the reasons expressed below, defendant's motion to exclude will be granted in part and denied in part without prejudice, and its summary judgment motion will be denied.

## I.   <u>BACKGROUND</u>

In 2001, plaintiff Francis Howley's personal identifying and credit information became "mixed" with personal identifying and credit information of an individual named Francis Firlein. Apparently, the retail store Sears reported a credit card account that belonged to Mr. Firlein under Mr. Howley's social security number.  Mr. Firlein and Mr. Howley have almost identical social security numbers, except for the last number.  Since the credit card was submitted under Mr. Howley's social security number and

---

[1] Plaintiffs have withdrawn their state law claims and their claim for violation of section 1681g(a) of the FCRA.

Mr. Howley and Mr. Firlein share the same first name, i.e., Francis, their Experian credit files became "mixed."  Experian follows a rule that if the first name and social security number match, then new credit information can be added.  Experian follows this rule based on the reasoning that when women marry, their first name and social security number typically do not change, but their last name and address do change.

In May 2003, plaintiff[2] obtained a copy of his Experian file, noticed the discrepancy, and disputed the credit information belonging to Mr. Firlein that appeared on his report.  Mr. Firlein's mailing address, credit accounts, and other personal identifying information had also appeared on Mr. Howley's Experian credit report.  On May 13, 2003, Experian removed the "trade lines" (reported information by credit grantors usually containing the account number, payment status, balance information, as well as account holder name, address, date of birth and social security number) that belonged to Mr. Firlein from Mr. Howley's file, and added a "do not combine" mechanism to block the addition of any trade lines pertaining to Mr. Firlein onto plaintiff's file.

Several years later, on or about January 23, 2007, plaintiffs received a telephone call from Tom Subranni, Esq.,

_____

[2] When used singularly, "plaintiff" refers to Francis Howley.

advising them that he had been contacted by Mr. Firlein. Plaintiffs recognized Mr. Firlein's name as the name on plaintiff's credit report generated by Experian.  Mr. Subranni advised plaintiffs that Mr. Firlein believed that plaintiff Francis Howley was Mr. Firlein's long lost twin brother and was interested in making contact with him.

Plaintiffs obtained Mr. Firlein's telephone number from Mr. Subranni and contacted Mr. Firlein to determine Mr. Firlein's intentions.  During their telephone conversation with Mr. Firlein, plaintiffs state that they learned that plaintiff Francis Howley's personal and private information including plaintiff's personal contact information appeared on Francis Firlein's credit report.

Mr. Firlein later contacted plaintiffs and told them that he and his fiancé had been outside plaintiffs' home on two occasions.[3]  On February 12, 2007, plaintiffs received another call from Mr. Firlein who said he was in the vicinity and wanted to visit.  Plaintiffs told Mr. Firlein not to visit and filed an incident police report for harassment with the Galloway Township Police Department.

After reporting Mr. Firlein's conduct to the Galloway

_____

[3] Plaintiff Candice Howley testified she recalled a man knocking on her door in the middle of the night, but did not permit him to enter the house.  She testified she believed that it was Mr. Firlein.

4

police, plaintiffs received a letter from Mr. Firlein who continued to claim that Mr. Howley was his long lost twin brother and reiterating his intent to reunite with him. Plaintiffs subsequently contacted the local police in Thurman, Ohio, where Mr. Firlein resided, to report Mr. Firlein's conduct. Plaintiffs state that Mr. Firlein had been convicted of running a drug lab and for drunken violent behavior, and had "mental impairments."

In or around April 2008, plaintiffs became aware that Mr. Firlein had been committing identity theft using plaintiff Francis Howley's identifying information which plaintiffs allege was included on Francis Firlein's credit report produced by Experian to Mr. Firlein.  Plaintiffs allege that as a result of the "mixing" of Mr. Howley's and Mr. Firlien's credit files, plaintiffs have received calls and notices from creditors and debt collectors alleging that Mr. Howley owes significant sums of money to entities with whom plaintiffs have had no business, and that they have been forced to expend substantial sums of money to pay for a credit monitoring service in an attempt to resolve the credit difficulties created by the mixing of the credit files.

## II.  **JURISDICTION**

This Court has federal question jurisdiction over plaintiffs' FCRA claims pursuant to 28 U.S.C. § 1331.

III.  **DISCUSSION**

A.   **Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met this burden, the

6

nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.    The Fair Credit Reporting Act**

The stated purpose of the Fair Credit Reporting Act (FCRA) is "... to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter."  15 U.S.C.A. § 1681(b).  "The ... FCRA ... was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner."  Cortez v. Trans Union, LLC, 617 F.3d 688, 706 (3d Cir. 2010)(citing Guimond v. Trans Union Credit Info.

7

<u>Co.</u>, 45 F.3d 1329, 1333 (9th Cir. 1995) (citations omitted)).

In passing the FCRA, Congress "... hoped to address a number of related problems, including the inability at times of the consumer to know he is being damaged by an adverse credit report, the lack of access to the information in [his] file, the difficulty in correcting inaccurate information, and getting [his] version of a legitimate dispute recorded in ... [his] credit file." <u>Id.</u> (citing S.Rep. No. 91-517, at 3 (1969)(internal citations omitted)).  The Third Circuit has acknowledged that "'[t]hese consumer oriented objectives support a liberal construction of the FCRA,' and any interpretation of this remedial statute must reflect those objectives." <u>Id.</u>

There is no dispute between the parties that plaintiffs are "consumers" and defendant is a "consumer reporting agency" as those terms are defined under the FCRA.  <u>See</u> 15 U.S.C.A. § 1681a. There is also no dispute that the FCRA applies to plaintiff Francis Howley's credit file maintained by Experian which is the subject of this litigation.

Plaintiffs have alleged violations of sections 1681b(a), 1681e(a), 1681e(b), and 1681h(a) of the FCRA.  Section 1681b(a) sets forth the conditions under which specific individuals and entities may receive a consumer report.  <u>See</u> 15 U.S.C.A. § 1681b(a).  Section 1681e(a) requires that a consumer reporting agency maintain "reasonable procedures" designed to avoid

violations of the FCRA and that it "... shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report" and that it may not "...furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title."  15 U.S.C.A. § 1681e(a).

Section 1681e(b) provides that "[w]henever a consumer reporting agency prepares a consumer report[4] it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C.A. § 1681e(b).  Finally, section 1681h(a) requires that a "consumer reporting agency shall require, as a condition of making the disclosures required under section 1681g of this title, that the consumer furnish proper identification."  15 U.S.C.A. § 1681h(a).

---

[4] The FCRA defines a "consumer report," in relevant part, as:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for-(A) credit or insurance to be used primarily for personal, family, or household purposes;

15 U.S.C.A. § 1681a(d)(1).

### 1.   Statute of Limitations

The FCRA contains a statute of limitations for bringing claims which states:

> An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of
>
> > (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or
> >
> > (2) 5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C.A. § 1681p.

Defendant states that plaintiffs' claims are based on an alleged FCRA violation that occurred in May 13, 2003 when plaintiff Francis Howley's personal credit information became "mixed" with Francis Firlein's personal credit information. Defendants argue that plaintiffs' FCRA claim is barred by the statute of limitations because they did not file their action within five years of the alleged violation.  Defendants state that plaintiffs were required to file their FCRA action no later than May 13, 2008, and that the filing of their complaint on January 16, 2009, was beyond the five year statute of limitations.

Plaintiffs respond that Experian violated the FCRA in 2007, 2008 and 2009 when it provided plaintiff's personal information

10

to Mr. Firlein and sold plaintiff's information to creditors as part of Mr. Firlein's credit report.  Specifically, plaintiffs attach a September 20, 2008 credit report they claim Experian sent to Mr. Firlein which contains plaintiff's social security number.  They also attach a May 5, 2009 "Administrative Report" prepared for Mr. Firlein that includes plaintiff's social security number, name, and New Jersey home address which they allege was sold to nine different creditors from 2007 to 2009. Plaintiffs argue that although Experian may have placed a "do not combine" flag on plaintiff's file, thus stopping Mr. Firlein's information from appearing on plaintiff's file, Experian did not place a "do not combine" flag on Mr. Firlein's file.  Plaintiffs argue that it was not until July 16, 2010, when Experian used a "soft delete" process to disassociate plaintiff's social security number from Mr. Firlein's credit records that the "mixed file" problem was finally resolved.  According to plaintiffs, Experian has committed ongoing violations of the FCRA, and the statute of limitations bars a claim two years after the last violation so that the statute of limitations does not run until July 16, 2012, two years after the defendant finally fixed the mixed file problem.

In response to plaintiffs, defendant argues that after May 13, 2003, plaintiff's information was never mixed into Mr. Firlein's file by Experian.  The supplemental affidavit of

11

Kathleen Centanni, Compliance Manager for Experian, states that in July 2007 creditors began to report trade lines with Francis Firlein's name attached to plaintiff's address and social security number as a result of Mr. Firlein's fraudulent credit activity and not due to any mixing of the files by Experian. Experian admits that they sent two documents to Mr. Firlein, a January 22, 2007 file disclosure which they state contained no information relating to plaintiff, and a September 20, 2008 disclosure which apparently did contain plaintiff's identifying information.  Defendant argues, however, Mr. Firlein had fraudulently obtained that information elsewhere and had committed identity theft.

There is a genuine dispute of material fact concerning whether Mr. Firlein obtained plaintiff's identifying information from Experian or from other sources, and when he obtained the information.  Plaintiffs have provided sufficient evidence that an Experian credit report prepared for Mr. Firlein contained plaintiff's credit information and the report was provided to creditors and available to Mr. Firlein within the two years prior to filing their complaint.  See Lawrence v. Trans Union LLC, 296 F.Supp.2d 582, 587 (E.D.Pa. 2003) ("Liability arises under § 1681e(b) when the consumer reporting agency issues an inaccurate consumer report" ... and "Each transmission of the same credit report is a separate and distinct tort to which a separate

statute of limitations applies." )(citing Jaramillo v. Experian Info. Solutions. Inc., 155 F.Supp.2d 356, 359-60 (E.D.Pa. 2001)). Drawing all justifiable inferences in favor of plaintiffs, defendant has not met its burden of showing an absence of a genuine dispute of material fact regarding the timing of the alleged FCRA violations and, therefore, defendant's motion for summary judgment based on the statute of limitations is denied.

The Court notes, however, that plaintiffs' claims of FCRA violations that were discovered prior to January 16, 2007, two years before plaintiffs filed their complaint, are time-barred. See Philbin v. Trans Union Corp., 101 F.3d 957, 968 n.7 (3d Cir. 1996).  However, although certain claims may be time-barred, plaintiffs may use evidence concerning the time-barred claims to satisfy their burden of proof on their timely claims.  Id.

### 2. Causation

Plaintiffs allege that defendant negligently and willfully violated the FCRA.  Defendants argue that plaintiffs have no evidence that Experian caused their alleged damages and, therefore, cannot prove a negligent violation of the FCRA.

The Third Circuit has ruled that a "FCRA plaintiff [must] produce evidence from which a reasonable trier of fact could infer that the inaccurate entry was a substantial factor that brought about the [injury]." Philbin, 101 F.3d at 969 (citing Restatement (Second) of Torts § 431(a)).  Plaintiffs list their

13

evidence of causation as: the mixed credit reports of Mr. Howley and Mr. Firlein which permitted each person to have the other's identifying information; Experian's failure to use its "do not combine" and "soft delete" procedures to block Firlein's report from being able to post or display information about Mr. Howley until 2010; Mr. Firlein's possession of Mr. Howley's full social security number; the Experian report containing Mr. Howley's full social security number as a "variation" on Mr. Firlein's credit report; and the 2009 "Admin Reports" for Mr. Howley and Mr. Firlein in which each showed identifying information of the other and sales of the reports by Experian to third parties. Plaintiffs also rely on the Galloway Township Police Department report which contains plaintiffs' harassment complaint concerning Mr. Firlein after Mr. Firlein obtained Mr. Howley's identifying information.

Defendants argue that plaintiffs cannot prove that it was Experian who provided Mr. Howley's credit information to Mr. Firlein prior to January 2007.  Defendants state that not only is Mr. Firlein's statement that he had seen Mr. Howley's information on his "credit report" insufficient to identify that it was an Experian credit report, but that Mr. Firlein's statements should be excluded as inadmissible hearsay.  Defendant also seeks to exclude the opinion of plaintiff's expert, Mr. Hendricks, who opined that Mr. Firlein obtained Mr. Howley's identifying

14

information from Experian.  Although defendant filed a separate
motion to exclude the statements of Mr. Firlein and Mr.
Hendricks, since the admissibility of the statements pertain
directly to evidence relied upon for summary judgment, the Court
will address them in conjunction with the summary judgment
motion.

### a.        Hearsay Statements of Mr. Firlein

### 1.    Availability of Declarant at Trial

Plaintiffs state that in January 2007 Mr. Firlein told them
that he obtained Mr. Howley's credit information from a "credit
report."  They also submit a copy of a letter presumably written
by Mr. Firlein to plaintiffs which indicates that Mr. Firlein
knew plaintiff's address, social security number, and birth
date.[5]  This telephone conversation and letter are unverified
out-of-court statements and, therefore, hearsay.  See
Fed.R.Civ.P. 802.  Inadmissible hearsay may not be considered for
purposes of summary judgment.  Smith v. City of Allentown, 589
F.3d 684, 693 (3d Cir. 2009).  If, however, plaintiffs can
produce Mr. Firlein at trial to testify about the credit report
he received, then the statement can be considered on summary
judgment.  Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware
Co., Inc., 998 F.2d 1224, 1235 n. 9 (3d Cir. 1993) (finding that

---

[5] Although Mr. Firlein states that he and Mr. Howley have
the same birth date, other records indicate a different birth
date for Mr. Howley.

even though statement was hearsay, "... in this circuit it can be considered on a motion for summary judgment because it is capable of being admissible at trial."); J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, (3d Cir. 1990) (concluding that "... hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present the evidence through direct testimony, i.e., in a form that 'would be admissible at trial.'")(citing Williams v. Borough of West Chester, 891 F.2d 458, 465-66 n. 12 (3d Cir. 1989)).

Plaintiffs maintain that Mr. Firlein can be called as a witness at trial and asked how he obtained plaintiff's social security number and birth date, and whether or not he was able to obtain credit using that information.  Defendant states that plaintiffs did not list Mr. Firlein as a potential witness in their Rule 26 disclosures, that defendant was unable to contact him during discovery, and that it is possible that he is beyond the subpoena power of the Court.

Since the plaintiffs wish to rely on the hearsay statements, it is their burden to show that Mr. Firlein would be available for trial.  Davis v. Mountaire Farms, Inc., 598 F.Supp.2d 582, 591 (D.Del. 2009) ("the party seeking admission of evidence ... has the burden to establish its admissibility"); accord David by Berkeley v. Pueblo Supermarket of St. Thomas, 740 F.2d 230, 235

16

(3d Cir. 1984) ("the burden of establishing the facts which qualify a statement as an excited utterance rests with the proponent of the evidence.").  Plaintiffs simply state that "if Mr. Firlein is found," then he would be able to testify. Plaintiffs have offered no evidence, however, that Mr. Firlein is available to testify at trial, or even stated that they intend to call him as a witness at trial.  It is also noteworthy that plaintiffs also seek to introduce Mr. Firlein's hearsay statements under Fed.R.Evid. 804, which rule presumes that the declarant is unavailable.  Although the law permits hearsay statements to be considered if the witness could later testify, it would seem that the law requires more than just a remote possibility, and plaintiffs would need to show that some likelihood exists that he will appear at trial and testify, or at least indicate that they intend to call him as a witness, particularly, here, where defendant has provided facts indicating that Mr. Firlein is not available to testify.  Thus, Mr. Firlein's statements are hearsay and plaintiffs have not provided any proof that he is capable of testifying at trial.

### 2.   Exceptions to Hearsay

Plaintiffs argue that if Mr. Firlein is not available that Mrs. Howley's notes memorializing her telephone conversation with Mr. Firlein, as well as Mr. Firlein's letter to the plaintiffs come under an exception to the hearsay rule.

### a).  Fed.R.Evid. 804(b)(3)

Rule 804(b)(3) states:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(3) Statement against interest.--A statement that:
(A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
(B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

An "essential predicate" for a statement against interest is that it "be objectively contrary to the declarant's interest." United States v. Ashfield, 735 F.2d 101, 110 (3d Cir. 1984). Courts have generally found that the statement must be clearly against his interest and not made for any self-serving reason. See PECO Energy Co. v. Boden, 64 F.3d 852, (3d Cir. 1995) (finding that hearsay statement was admissible under Rule 804(b)(3) where declarant said he was told to steal by his employer since it subjected him to possible criminal and civil liability); Hayes v. City of Philadelphia, No. 04-554, 2005 WL 3054550, at *3 (E.D.Pa. Nov. 15, 2005) (noting that statement by declarant that she had accused plaintiff of a crime and testified plaintiff committed the crime, even though she knew plaintiff was

18

innocent was arguably admissible under Rule 804(b)(3)); Cf.
Ebenhoech v. Koppers Industries, Inc., 239 F.Supp.2d 455, 464
(D.N.J. 2002) (finding that statements during an investigation
could "have been serving as a conduit for defenses" and noting
that a statement made after investigation had begun is likely not
against interest, but strategically made).

Plaintiffs argue that when Mr. Firlein made the statements
to Mrs. Howley in January 2007, he had already committed identity
theft, although that fact was not yet known to the plaintiffs.
Plaintiffs refer to an August 21, 2008 Experian Transaction Log
showing that an account opened on October 1, 2002, should be
"DELETED [due to] FRAUD." Plaintiffs also refer to an April 3,
2008 Trans Union report listing fraudulent accounts marked as
"not Howleys" that were opened before January 2007. Plaintiffs
argue that by admitting that he had Mr. Howley's identifying
information he was exposing himself to criminal and civil
penalties for identity theft. Plaintiffs also argue that Mr.
Firlein's statements were harassing and, therefore, also against
his interest as they could expose him to criminal or civil
liability.

Defendants respond that the August 21, 2008 Transaction Log
sent to Experian by Trans Union and the April 3, 2008 Trans Union
report are not evidence of identity theft, but rather, evidence
that Trans Union's file was fully mixed in 2008 as a result of

Mr. Firlein's identify theft in 2007.

Based on the record before the Court, we can not conclude that Mr. Firlein's statements were so clearly contrary to his interests as to justify application of the hearsay exception. Putting aside the uncertainty as to when exactly Mr. Firlein began using Mr. Howley's identifying information, it is not objectively clear that the statements are against his interests. While it is true that it could be considered a link in establishing Mr. Firlein's access to Mr. Howley's information, it is far from a confession of liability.  On the contrary, the statement could have been made to offer the defense that he possessed the information innocently, not by theft but through the negligent conduct of the defendant.  It could have been a fishing expedition to determine whether plaintiffs were aware of the mixed files.  Or it could have been an attempt to establish the defense that he believed, rightly or wrongly, that plaintiff was his long lost brother.  Given Plaintiffs' own mistrust of Mr. Firlein, it seems more likely that Mr. Firlein was attempting to lull the Howleys rather than confess to them.  Statements made to establish a defense do not qualify for the exception.

This ambiguity concerning Mr. Firlein's intentions also undermines the claim that the letter falls within the exception. If Mr. Firlein was in fact earnest in his interest in reconnecting with what he believed to be his long lost twin

brother, a fact we can not determine either way, it would not appear that his statements were objectively harassing.  In any event, the purpose of the rule is to allow statements that are inherently reliable because of the content of the statement and the circumstances under which it was made.  The exception does not apply simply because the statements themselves (as opposed to their content) may be criminal conduct.  A false statement may be just as harassing as a true statement.  Thus, neither the statements made by Mr. Firlein to Mrs. Howley or the written correspondence are admissible under Rule 804(b)(3) as an exception to the rule against hearsay.

### b).  Fed.R.Evid. 803(1) and 803(5)

Although plaintiffs state that Mrs. Howley's notes regarding her conversation with Mr. Firlein, and Mr. Firlein's letter are admissible under Fed.R.Evid. 803(1) and 803(5), plaintiff does not explain how either the notes or letter fit under either exception.

Federal Rule of Evidence 803(1) (present sense impression) provides that hearsay will not be excluded if "... the statement describing or explaining an event or condition [is] made while the declarant was perceiving the event or condition, or immediately thereafter."  See Fed.R.Evid. 803(1).  Mrs. Howley's notes taken during or immediately after her conversation with Mr. Firlein could potentially come under Rule 803(1), except for the

statements made by Mr. Firlein which are hearsay.  Mr. Firlein's statements written by Mrs. Howley are hearsay within hearsay, and Rule 803(1) does not cover hearsay statements contained within Mrs. Howley's notes.

Federal Rule of Evidence 803(5) (recorded recollection) permits "[a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, [if it is] shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly.  If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."  Fed.R.Evid. 803(5).  Mrs. Howley's notes and the letter written by Mr. Firlein can be used to refresh Mrs. Howley's recollection and permit Mrs. Howley to testify about events during that time.  It does not, however, permit Mr. Firlein's hearsay statement to be admitted as evidence.  Mr. Firlein's statements are hearsay and Rule 803(5) does not permit his statements to be read into evidence for the truth of the matter.

Plaintiffs also state that the notes and letter may be offered not for their truth, but for other relevant, non-hearsay purposes.  If offered for a non-hearsay purpose such as Mrs. Howley's state of mind, then they can be used for such purpose.

22

Again, however, the out-of-court statement and letter by Mr.
Firlein are hearsay and cannot be used for the truth of the
matter stated therein (i.e., "I [Mr. Firlein] received your
information from a credit report").  Thus, Mr. Firlein's
statements made in the telephone call with plaintiffs and his
written correspondence are hearsay, and as such will be excluded
as evidence at the summary judgment stage.

### b.   Plaintiffs' Expert Report

Defendant also seeks to bar Mr. Hendricks' testimony arguing
that it does not meet the requirements of Federal Rule of
Evidence 702[6] or the standard under Daubert v. Merrell Dow
Pharma., 509 U.S. 579 (1993)[7].  Although presented as a motion to

---

[6] Rule 702 provides,

If scientific, technical, or other specialized
knowledge will assist the trier of fact to understand
the evidence or to determine a fact in issue, a witness
qualified as an expert by knowledge, skill, experience,
training, or education, may testify thereto in the form
of an opinion or otherwise, if (1) the testimony is
based upon sufficient facts or data, (2) the testimony
is the product of reliable principles and methods, and
(3) the witness has applied the principles and methods
reliably to the facts of the case.

[7] In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S.
579, 572 (1993), the Supreme Court analyzed Rule 702, and
instructed that a two-step analysis is to be used to assess the
admissibility of the proffered expert testimony on scientific
issues under Rule 702.  The expert testimony must be reliable, so
that it must be "scientific," meaning grounded in the methods and
procedures of science, and it must constitute "knowledge,"
meaning something more than subjective belief or unsupported
speculation.  Daubert, 509 U.S. at 590.  Guideposts that the
court may consider in assessing the reliability of the proffered
expert testimony include, but are not limited to: (1) whether the

exclude at the summary judgment stage, defendant has essentially
presented a motion in limine to restrict plaintiffs' evidence at
trial.  The purpose of Rule 702 and Daubert is to ensure that the
expert is sufficiently qualified, his opinion is based on
sufficient facts, and his testimony is based on reliable methods.
Id.

The parties do not disagree that plaintiffs' expert, Evan
Hendricks, is a qualified expert on credit reporting and privacy.
Rather, defendants argue that Mr. Henricks' opinion on causation
is inadmissible because his opinion is not based on a reliable
method, because it is not based on sufficient data or reliable
application of his methodology, and because it will not be
helpful to a jury.  Defendants argue that Mr. Hendricks' opinion
that Mr. Firlein obtained plaintiff's credit information from an
Experian mixed credit report is flawed because Mr. Hendricks only
reviewed documents from Experian, and failed to consider
documents from Equifax, another consumer reporting agency.
Defendants further argue that Mr. Hendricks' deposition testimony

---

expert's methodology has been tested or is capable of being
tested; (2) whether the technique has been subjected to peer
review and publication; (3) the known and potential error rate of
the methodology; and (4) whether the technique has been generally
accepted in the proper scientific community.  Id. at 593-94; In
re TMI Litig., 193 F.3d 613, 663-64 (3d Cir. 1999).  Ultimately,
a court is required to act as a gatekeeper "to make certain that
an expert, whether basing testimony upon professional studies or
personal experience, employs in the courtroom the practice of an
expert in the relevant field."  Kumho Tire Co. v. Carmichael, 526
U.S. 137, 152 (1999).

shows that he admitted that the Equifax files were mixed in 2003 -2006, thus undermining his causation theory that the only way Mr. Firlein could have gotten Mr. Howley's credit information is from an Experian credit report containing the mixed information.

Plaintiffs respond that Mr. Hendricks reviewed the "2006 Kroll Report"[8] but only admitted that it showed the data as it appeared on that report in 2006, and did not admit that it proved Mr. Howley's Equifax file was mixed with Mr. Firlein's file. Plaintiffs also argue that Equifax does not list social security variations (the full social security number of another person) on its files, even mixed files.

Although defendant's motion does raise some concerns about the methodology used by Mr. Hendricks, the Court is not convinced on the present record, and at this stage of the proceedings, that his opinion concerning causation should be stricken.  Although defendants criticize Mr. Hendricks for failing to review 2003 - 2006 Equifax documents, it is unclear what documents these may be and whether such documents exist.  Defendant's criticism that Mr. Hendricks should have requested archived records from Equifax is more properly explored on cross-examination.  Also, no Equifax files were presented that show the files were mixed prior to 2006, and plaintiffs have presented evidence that only Experian

---

[8] The "2006 Kroll Report" is apparently a report generated in connection with a 2006 mortgage refinance transaction via Kroll, a reseller of credit located in Mount Laurel, NJ.

files contain the full social security number variations.  In any event, even if we were to exclude the testimony of Mr. Hendricks at this time, plaintiffs have presented other evidence of causation to survive summary judgment.  As explain earlier in this Court's opinion,[9] plaintiffs have presented enough evidence for a jury to decide whether Experian caused plaintiffs' damages by disclosing Mr. Howleys' identifying information to Mr. Firlein.

Consequently, defendant's request to exclude plaintiffs' expert's testimony on causation is denied.[10]

### 3. Punitive Damages

Defendant argues that plaintiffs' claim for punitive damages fails because they cannot show that defendant willfully violated the FCRA.  Punitive damages are available under the FCRA in cases of willful noncompliance with the statute.  See 15 U.S.C. § 1681n.  The Supreme Court has held that willful violations of the FCRA are assessed for "reckless disregard."  Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 60, 69, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007); see Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 192 n. 8 (3d Cir. 2009).  "[A] company subject to FCRA does not act in reckless disregard of it unless the

---

[9] See Opinion section III.B.2.

[10] The Court's ruling on the motion to exclude is without prejudice, and the parties may file properly supported motions in limine in advance of trial.

26

action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Cortez, 617 F.3d at 721 (citing Safeco, 551 U.S. at 69).

Plaintiffs have offered evidence that Experian was put on notice of the mixed file by plaintiff in 2003; that Experian did not use the "do not combine" and "soft delete" procedures on Mr. Firlien's file until July 2010; and that Experian sent plaintiff's identifying information to Mr. Firlein, including plaintiff's full social security number. This is sufficient evidence to go to a jury on the issue of whether Experian willfully violated the FCRA. See Cortez, at 709 ("the reasonableness of a credit reporting agency's procedures is 'normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question.'"); Campbell v. Experian Information Solutions, Inc., No. 08-4217, 2009 WL 3834125, at * 9 (W.D.Mo. Nov. 13, 2009)(finding that Experian had notice of problems in plaintiff's file consistent with a mixed file and yet took no action to determine whether plaintiff's information was mixed with another person's information so that Experian could be found by a reasonable juror to have been reckless). Therefore, defendant's motion for summary judgment on plaintiff's punitive damages claim is denied.

27

**4. FCRA Section 1681e(b)**

Defendant summarily argues that plaintiffs' claim under section 1681e(b) of the FCRA should be dismissed because Experian did not issue a consumer report for Mr. Howley that was inaccurate since 2003, and therefore, the claim is beyond the FCRA's five year statute of limitations. Plaintiffs, however, have alleged that Experian incorrectly mixed his credit information with Mr. Firlein thus creating an inaccurate consumer report for Mr. Firlein which contained Mr. Howley's credit information, within the limitations period.

The view that defendant suggests is too narrow and not in keeping with the statute's remedial purpose. <u>Cortez</u>, 617 F.3d at 706 (applying a liberal construction of the FCRA and acknowledging it as a remedial statute). Although Experian technically may not have issued an inaccurate report for Mr. Howley since 2003, plaintiffs allege that Experian issued an inaccurate report for Mr. Firlein due to their mixing Mr. Howley's credit information and making it available to Mr. Firlein. Also, Experian has not shown that the FCRA limits a cause of action solely to the person who is the subject of the alleged inaccurate consumer report.[11]   <u>See</u> 15 U.S.C.A. §§ 1681n,

---

[11] The case that defendant relies on, <u>Wantz v. Experian Info. Solutions</u>, 386 F.3d 829, 833 (7th Cir. 2004), is inapposite since the <u>Wantz</u> case held that the plaintiff failed to prove damages as a result of an alleged failure to conduct an adequate reinvestigation into a claim of an unpaid judgment.

1681o, 1681e(b).  It would seem, given the remedial nature of the FCRA, that a consumer should be able to bring a claim if he has been harmed as a result of his personal information appearing on another person's consumer report.

Thus, plaintiffs have alleged sufficient facts to go to a jury on their claim of violation of section 1681e(b) of the FCRA.

**5.    FCRA Section 1681h(a)**

Section 1681h(a) requires that a "consumer reporting agency shall require, as a condition of making the disclosures required under section 1681g of this title, that the consumer furnish proper identification."  Defendants briefly state, without much argument, that plaintiffs' Section 1681h(a) claim must fail because unlike most cases where this section of the FCRA is relied upon, this is not a case where the consumer reporting agency improperly refused to give a consumer his or her own credit report, but a case in which a consumer's information was given to another consumer.

As stated above, the FCRA is a remedial statute, Cortez, 617 F.3d at 706, and there is nothing in the statue or case law to support defendant's very narrow reading.  As such, plaintiffs have presented enough evidence to go to a jury on the issue of whether Experian's disclosure of plaintiff's personal credit information to Mr. Firlein was without proper identification in violation of Section 1681h(a).

29

### 6.   FCRA Section 1681b(a) and 1681e(a)

Section 1681b(a) sets forth the conditions under which specific individuals and entities may receive a consumer report. See 15 U.S.C.A. § 1681b(a).  Section 1681e(a) requires that a consumer reporting agency maintain "reasonable procedures" designed to avoid violations of the FCRA and that it "... shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report" and that it may not "...furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title." See 15 U.S.C.A. § 1681e(a).

Defendant states that plaintiffs' Section 1681b(a) and 1681e(a) claims fail because they are beyond the statute of limitations and because plaintiff cannot show causation or damages.  Defendant raises these defenses in conjunction with the arguments discussed earlier in this opinion regarding summary judgment.  For the reasons previously discussed, we deny summary judgment on these grounds.  See Opinion, Section III.B.1 and 2.

### IV.   CONCLUSION

For the reasons expressed above, defendant's motion to exclude is granted in part and denied in part without prejudice, and its motion for summary judgment is denied.   An appropriate

Order will be entered.


Date: September 27, 2011          S/Noel L. Hillman          

At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.